IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


DEEPA SONI, M.D.,                                )        CIVIL ACTION NO. 1:16-cv-10630
      *Plaintiff*,                              )
                         )
v.                                               )        COMPLAINT AND
                         )        DEMAND FOR JURY TRIAL
ROBERT WESPISER, M.D.,                           )
TIMOTHY COUNIHAN, M.D.                           )
BERKSHIRE MEDICAL CENTER,                        )
BERKSHIRE FACULTY SERVICES, INC., and            )
BERKSHIRE HEALTH SYSTEMS, INC.,                  )
      *Defendants*.                          )


<u>PARTIES</u>

1.     The Plaintiff, Deepa Soni, M.D., is an individual who resides in Boston, Suffolk County, Commonwealth of Massachusetts.

2.     The Defendant, Robert Wespiser, M.D., is an individual who resides at 70 Orchard Street, Lee, Berkshire County, Commonwealth of Massachusetts.

3.     The Defendant, Timothy Counihan, M.D., is an individual who resides at 20 Major Taylor Boulevard, Worcester, Worcester County, Commonwealth of Massachusetts.

4.     The Defendant, Berkshire Health Systems, Inc. (hereinafter "Berkshire Health"), is a Massachusetts corporation with a principal place of business at 725 North Street, Pittsfield, Berkshire County, Commonwealth of Massachusetts.

5.     The Defendant, Berkshire Medical Center, is a Massachusetts corporation with a principal place of business at 725 North Street, Pittsfield, Berkshire County, Commonwealth of Massachusetts.

6.     The Defendant, Berkshire Faculty Services, Inc., is a Massachusetts corporation with a principal place of business at 725 North Street, Pittsfield, Berkshire County, Commonwealth of Massachusetts.

7.    Berkshire Health Systems, Inc. is a medical services provider.  It has two affiliates under its control, Berkshire Medical Center, which is the hospital facility (hereinafter the "Medical Center"), and Berkshire Faculty Services, Inc. (hereinafter "Faculty Services"), which is the nominal employer of the staff physicians.

8.    Berkshire Health, the Medical Center and Faculty Services, at the last time they each reported to the Secretary of State's office, all had the same President, David Phelps. Berkshire Health, the Medical Center and Faculty Services all have the same "principal office" address, 725 North Street, Pittsfield, Massachusetts, and the Medical Center hospital facility, where Dr. Soni practiced medicine, is located at 725 North Street, Pittsfield, Massachusetts.

## JURISDICTION AND VENUE

9.    Jurisdiction is proper because all events herein arise from the same nexus of facts and are violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq.

10.   Venue is proper because under 28 U.S.C. §1391, a civil action may be brought in any judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.

11.   The plaintiff has met the administrative pre-requisite to the filing of a lawsuit alleging claims under Title VII and G.L. c. 151B.  She filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination and the U.S. Equal Employment Opportunity Commission.  That Charge (in its amended form adding additional allegations) was removed on March 29, 2016.

## FACTS

12.   Deepa Soni, M.D., is Harvard-trained neurosurgeon of Indian descent.

13.   Dr. Soni was the second woman to complete the Neurosurgery Training Program, in its entirety, in the 80 year history of Harvard Medical School/Brigham & Women's Neurosurgical Training Program, and she was the first Indian woman to do so.

14.   Dr. Soni completed her training in 2007 and has been practicing neurosurgery since that time in the United States and New Zealand.

15.   Dr. Soni was Board Certified in 2012 and is presently one of approximately 300 female Board Certified neurosurgeons in the United States.

16.     Dr. Soni began working at the Medical Center under contract with Faculty Services in
        November 2008.

17.     All physicians practicing medicine at the Medical Center, including Dr. Soni, were
        required to comply with Berkshire Health rules and regulations, including those relative
        to medical records; they were required to chart notes, procedures, etc. in the paper or
        electronic medical records which were owned, maintained and operated by Berkshire
        Health; and they had Berkshire Health email addresses, i.e.,
        @berkshirehealthsystems.com.  Similarly, regardless of who paid for their services, all
        physicians practicing medicine at the Medical Center were required to obtain clinical
        staff privileges at the Medical Center, and their ability to practice medicine at the
        Medical Center was contingent upon successfully obtaining those privileges.

18.     The Medical Center, through its bylaws, initiated and maintained rules and regulations
        for the Medical Staff, and all physicians practicing medicine at the Medical Center were
        required to comply with those bylaws.  The bylaws governed almost all areas of practice,
        including hospital appointments and reappointments; the categories of appointments
        that physicians at the Medical Center were given, i.e., provisional staff, active staff, etc.;
        the procedure for appointment for membership and privileges and re-appointment at
        the Medical Center; the procedure for corrective action for physicians practicing at the
        Medical Center, including termination; the qualification and election process for Chief of
        Staff, Secretary, Treasurer, Officers, and Chairpersons of the various hospital
        departments; the appointment to committees, both the appointment of the Executive
        Committee, which was to act on behalf of the medical staff, and the various other
        committees, e.g., operating room committee, endoscopy committee, etc.; the teaching
        responsibilities of all physicians practicing at Medical Center; the number of and rules
        for meetings of the medical staff at Medical Center; and the contribution each physician
        was required to make to compensate the Chief of Staff of the Medical Center.

19.     Although Dr. Soni signed an Employment Agreement with Faculty Services to provide in-
        patient and out-patient neurosurgical services to Medical Center patients, her benefits,
        e.g., health insurance, retirement, and life insurance were all administered through
        Berkshire Health.  Dr. Soni was prohibited from engaging in any research activities which
        conflicted in any way with the interests of Berkshire Health, prohibited from engaging in
        any employment which competed in any way with Berkshire Health, prohibited from
        owning or investing in any entity which competed with Berkshire Health, and prohibited
        from engaging in any acts which might injure Berkshire Health.

20.     Under her contract, Dr. Soni was required to develop the range of neurosurgery and
        related care services appropriate for the Medical Center, required to provide assistance
        to the Medical Center management in developing a budget for neurosurgery services,
        required to collaborate with physicians to develop and implement new technologies for
        use at the Medical Center; and required to execute agreements and maintain records

necessary for reimbursement to the  Medical Center and Faculty Services for neurosurgery services.

21.    Dr. Soni was not permitted to treat patients at any other hospital or private practice group, but instead was required to devote her entire business time to the care of the Medical Center's patients and she was required to obtain and maintain clinical staff privileges so that she could do so.  Dr. Soni was required to treat all Medical Center patients assigned to her, and she was required to participate in and cooperate with all managed care programs in which the Medical Center participated.

22.    Under her contract, Dr. Soni was required to teach medical students and residents at the Medical Center, serve on committees at the Medical Center, participate in all Medical Center quality improvement programs, and obtain certifications consistent with Medical Center By-Laws.  Dr. Soni was prohibited from engaging in any research activities which conflicted in any way with the interests of the Medical Center, prohibited from engaging in any employment which competed in any way with the Medical Center, prohibited from owning or investing in any entity which competed with Medical Center, and prohibited from engaging in any acts which might injure the Medical Center.  Dr. Soni was not permitted to disclose Medical Center and Faculty Services proprietary information to anyone outside of the Medical Center and Faculty Services except when instructed to do so by an officer of Faculty Services or the Medical Center, and the Medical Center had a right to take any Medical Center proprietary information that Dr. Soni originated or which came into her possession.

23.    Dr. Soni's direct supervisor was Dr. Timothy Counihan, the Medical Center's Chairperson of Surgery and acting Division Chief.  Dr. Counihan, a colorectal surgeon, was responsible for reviewing Dr. Soni's performance, even though he was a general surgeon and not a neurosurgeon, with no neurosurgical training, certifications, or expertise.  Dr. Counihan made decisions about the hours during which neurosurgical services would be provided and about the on-call schedule, specifically, when Dr. Soni would be required to answer patient calls.  Dr. Counihan also made decisions about the neurosurgery operating room schedule, the physician assistants' (PAs) schedules, and the patients that would be seen in the clinics.

24.    Dr. Counihan displayed discriminatory and retaliatory behavior towards Dr. Soni throughout her employment, because she was a minority woman who had achieved greater stature than he, because she raised concerns to him about unsafe practices in the Neurosurgery Department, and because she had sued other male doctors for gender discrimination.

25.    Dr. Soni openly and repeatedly told the Berkshire administration that Dr. Counihan lacked leadership, was not supportive of her or the other neurosurgeons, and was not providing clinical support to her as the "Chief of Surgery."

26.     In addition, Dr. Soni was supervised by Dr. Robert Wespiser, the Medical Center's Chief of Staff.  Dr. Wespiser also made decisions about the aforementioned as well as when and what committees Dr. Soni would be required to serve on.  Additionally, during her tenure at the Medical Center, Dr. Soni had regular meetings with Dr. Wespiser about the neurosurgical service and related problems.

27.     Dr. Wespiser, an internist, was suspended from the practice of medicine in 2008 and his probation was terminated in 2011.  During the period of time that he could not practice medicine, he was placed in the position of Chief of Staff.

28.     Dr. Wespiser was passive and deferred to Dr. Counihan's wishes, including participating in discrimination and retaliation against Dr. Soni.

29.     During Dr. Soni's tenure with the defendants, she performed more than 120 neurosurgical cases and had no intraoperative complications.

30.     Dr. Soni was recognized on multiple occasions for patient satisfaction greater than 99%.

31.     During 2009, there was an investigation into the Medical Center, Faculty and Berkshire Health Systems, regarding the conduct of another neurosurgeon at the Medical Center, who was subsequently terminated around March 2009.  Dr. Soni cooperated with this investigation.

32.     In September 2009, Dr. Soni submitted her resignation, to be effective November 2009, her one year work anniversary.  She was required to give a six-month notice, and as such, she worked until May 2010.

33.     After she did so, Dr. Counihan, with the consent of Dr. Wespiser, initiated a sham peer review of Dr. Soni.

34.     Specifically, two of Dr. Soni's elderly patients died at some point in time following surgery, for reasons unrelated to their neurosurgical problems, which is not uncommon.  Dr. Counihan initiated a formal, outside, third party, sham Peer Review of those cases.  He did not follow the specific process defined in the medical staff bylaws for doing so.

35.     When Dr. Soni questioned this, she was advised that this was not a formal peer review action, but that the cases were being discussed by the Peer Review Committee because there was no Mortality and Morbidity Conference, which is the typical forum for discussion of these types of matters.  Although Dr. Soni was advised that this was not really peer review per se, she did have concerns.

36.     During that period of time, Dr. Soni was afraid to complain about Dr. Counihan's and Dr. Wespiser's ongoing discriminatory and retaliatory treatment of her for fear that they would escalate this purported informal review of these cases.

37.   The purported discussion, really a sham peer review, of these cases went on until May 4, 2010, just five days before Dr. Soni's last day of work.

38.   Given the timing, Drs. Counihan and Wespiser, were successful in silencing Dr. Soni, essentially until she stopped working at the Medical Center.

39.   Dr. Soni's last day of work at Berkshire Medical Center/Berkshire Faculty Services/ Berkshire Health Systems, Inc. was May 9, 2010.

40.   After Dr. Soni left, Dr. Borhan Al-Atassi began practicing at the Medical Center under contract with Faculty Services.  Dr. Al-Atassi is a young, minority neurosurgeon.

41.   Dr. Al-Atassi contacted Dr. Soni in 2012 because he was experiencing what he perceived to be discriminatory and retaliatory behavior against him.  He advised Dr. Soni that his work was being unfairly criticized, and, like her, he had been subjected to a sham peer review.

42.   Dr. Soni assisted Dr. Al-Atassi in retaining counsel to pursue an employment discrimination claim.

43.   At or around that same time, Dr. Soni was informed that there was some sort of investigation of the defendants' treatment of neurosurgeons by the Massachusetts Board of Registration of Medicine.

44.   At or around the spring of 2013, Dr. Soni accepted a position at New Hampshire NeuroSpine Institute.  Because she was to provide care for patients at Elliot Medical Center, Concord Hospital and Catholic Medical Center, she sought privileges at the three hospitals at or around April 2013 and thereafter.

45.   She was granted privileges at Elliot Medical Center and Concord Hospital.

46.   With regard to Catholic Medical center, Dr. Soni was contacted by Christine Senko, Director of Medical Staff Support Services in late July 2013, and she advised Dr. Soni that Catholic Medical Center was not going to grant Dr. Soni privileges.  Dr. Soni was shocked.  She had never had a hospital refuse to grant her privileges, and she had never had her privileges at any hospital limited, suspended or revoked.

47.   Dr. Soni asked why, and after significant inquiry, she came to understand that it was based on information contained in a letter sent to the committee by Dr. Counihan, and a subsequent conversation that Dr. Counihan had with Dr. Patrick Mahon, the Chairperson of the Credentialing Committee at Catholic Medical Center.

48.   In his role at Berkshire Medical Center, Dr. Counihan was not the appropriate person to have provided Catholic Medical Center with credentialing information, and Dr. Soni did not give his name as a reference for credentialing.

49.   Ms. Senko arranged for Dr. Soni to speak to Dr. Mahon.  That call took place in late July 2013.  Though initially not forthcoming, Dr. Mahon eventually said, in essence, that Dr. Counihan's remarks were the reason that Catholic Medical Center decided to "not move forward with credentialing [Dr. Soni]."

50.   Dr. Soni explained that Dr. Counihan must have provided false and defamatory information about her.  Dr. Mahon agreed to look into the situation further and to "talk to legal."  Dr. Soni never heard from him again.

51.   Dr. Counihan admitted to Dr. Soni in July 2013 that he indeed provided a letter to Catholic Medical Center in which he claimed that she had certain unspecified "difficulties" while working at the Medical Center.  This claim was false.

52.   Dr. Soni also communicated with Dr. Wespiser around the same time, in July 2013, and expressed concerns that she had reason to believe that Dr. Counihan and/or Dr. Wespiser had relayed false and defamatory statements about her to Catholic Medical Center.

53.   Dr. Wespiser advised Dr. Soni that he had not directly communicated to Catholic Medical Center.  Dr. Wespiser did not offer to correct the misinformation, even though in his position appropriate information should have been provided by him.  Dr. Soni then specifically asked Dr. Wespiser to intervene and to stop Dr. Counihan from providing false and defamatory information to Catholic Medical Center.  This did not occur.

54.   Since leaving the Medical Center practice in May 2010, to the present time, Dr. Soni has successfully obtained clinical privileges at seven hospitals (six in the USA and one in New Zealand), including level-one Trauma Centers that are much bigger than Catholic Medical Center.

55.   Catholic Medical Center is the only hospital that Dr. Counihan communicated with in conjunction with Dr. Soni's application for privileges.

56.   In August 2013, Dr. Soni was advised by another member of the Catholic Medical Center Credentialing Committee, who she had never met before, that he was "aware of [her] situation," and that [she] had been wronged.

57.   Dr. Soni met with this individual thereafter.  He advised her that Dr. Counihan made vicious and defamatory statements about her in a letter, and that the letter was followed by a telephone conversation which was even worse.  He did not give Dr. Soni the details of all of the statements, but he did say that Dr. Counihan said, in essence,

that Dr. Soni would be trouble for the hospital because she had filed multiple lawsuits against other hospitals.

58.   This same individual told Dr. Soni that the Credentialing Committee had essentially ignored her reference letters from several Board Certified neurosurgeons, which were "glowing," as well as her own credentials, i.e., Board Certification, no malpractice history, fellowship training, etc.

59.   This individual also advised Dr. Soni that the Credentialing Committee made its decision in part based on the fact that she had previously sued other doctors and hospitals for discrimination, which they were informed of by Dr. Counihan.

60.   As a result of not being granted privileges at Catholic Medical Center, Dr. Soni was unable to work at a position for which she had otherwise been hired; she suffered lost wages and emotional distress.

61.   Since that time and to this date, Dr. Counihan has continued to make false and defamatory statements about Dr. Soni to others.

62.   In November 2013, Dr. Soni started practicing part time at Baystate Medical Center ("Baystate") in Springfield, Massachusetts.  She received many consults and patient transfers from the Medical Center while on call at Baystate.  In December 2013, Dr. Soni accepted a patient from a physician at the Medical Center.  As a result, that physician and Dr. Counihan learned of Dr. Soni's employment/affiliation at Baystate.

63.   In January 2014, Dr. Soni learned from her boss that Dr. Counihan was defaming her to senior leadership at Baystate, and that negative comments had made it to the Chair of Surgery at Baystate.  Dr. Soni's boss indicated to her that her hiring had to be defended and justified to the Department Chair after this episode.

64.   From March 2014 through September 2014, multiple physicians at Baystate Medical Center expressed repeated and strong interest in bringing Dr. Soni on board for a permanent Neurosurgical position.  On September 2, 2014, a member of the leadership team informed Dr. Soni that "the job is yours [referring to a Neurosurgery Attending position that was open/ advertised]...we just have to sort out the details with senior administration."

65.   Around September 2014, treatment of Dr. Soni suddenly and abruptly changed. Baystate hired and began giving assignments to two new, additional locums neurosurgeons instead.  These new surgeons were far less qualified than Dr. Soni.  In addition, several other physicians, hospital staff and previous supporters of Dr. Soni began to act cold towards her and avoid her.

66.  Around this time, Dr. Soni approached a few physicians at Baystate, with whom she had been working closely, about losing assignments and asked if there were any problems with her work.  She was repeatedly told that there were absolutely no problems with her work.

67.  In December 2014, Dr. Soni had a conversation with one of the senior physicians, who was also in an administrative position, about job opportunities at Baystate Medical Center.  During that conversation, and without suggestion or solicitation from Dr. Soni, he used the word "discrimination."

68.  During this conversation, Dr. Soni inquired why the decision had been made to give assignments to two new, less-experienced neurosurgeons rather than to her, given that she had been the regular and only locums neurosurgeon for more than a year.  The response was "it's not like anyone is discriminating against you." Dr. Soni was totally taken aback as she never implied or mentioned any suspicion on her part that she was being discriminated against.

69.  In March 2015, Dr. Soni again expressed interest in an advertised, full-time, neurosurgery position at Baystate to one of the senior staff, who told her the following: "They have been interviewing several candidates."  Dr. Soni was never interviewed for this position.

70.  Several physicians indicated that they did not understand the Baystate administration's decision to not interview or consider Dr. Soni for this advertised, full-time, neurosurgery position.

71.  On or about March 13, 2015, a senior physician told Dr. Soni that he was going to talk to the administration and reiterate her interest in the position, as well as reiterate his own interest in Dr. Soni being hired for the full-time neurosurgery position.

72.  On or about March 30, 2015, Dr. Soni saw the full-time neurosurgery position that she had previously discussed with medical staff members being re-advertised on the American Association of Neurological Surgeons' website.

73.  In April 2015, Dr. Soni formally expressed her interest in the advertised, full-time, neurosurgery position at Baystate.  She sent a formal letter of interest and curriculum vitae on or about April 1, 2015, pursuant to directions contained in the advertisement for that position.  She received no acknowledgement or response from anyone.

74.  On or about April 3, 2015, a member of the leadership team at Baystate approached Dr. Soni and stated that the job advertisement was a "mistake" because it sought a general neurosurgeon, but that they were actually recruiting for a functional (a specific subspecialty) neurosurgeon, and that they had already hired another surgeon.  This same person also told Dr. Soni that he went to the hospital administration many months

earlier and said that many physicians were interested in hiring Dr. Soni full-time, but the Administration said that it was not interested in her because of the purported "problems" that she had at the Medical Center.

75.     The Neurosurgeon they hired for the advertised, full-time, neurosurgery position was junior, right out of residency, had no fellowship training or relevant experience, and was a general neurosurgeon with no subspecialty training in the area of Functional Neurosurgery.  Dr. Soni is significantly more qualified than this person for the advertised, full-time, neurosurgery position.


CLAIMS AGAINST THE DEFENDANT ROBERT WESPISER, M.D.


COUNT I
VIOLATION OF 42 U.S.C. §2000 et seq.
DISCRIMINATION BASED ON GENDER AND ETHNICITY

76.     The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

77.     By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of 42 U.S.C. §2000 et seq.

78.     As a direct and proximate result of the Defendant's discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

        WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.


COUNT II
VIOLATION OF 42 U.S.C. §2000 et seq.
RETALIATION

79.     The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

80.     By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by 42 U.S.C. §2000 et seq.

81.     As a direct and proximate result of the Defendant's retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

        WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT III
VIOLATION OF M.G.L. c. 151B
DISCRIMINATION BASED ON GENDER AND ETHNICITY

82.     The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

83.     By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of M.G.L. c. 151B.

84.     As a direct and proximate result of the Defendant's discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

        WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT IV
VIOLATION OF M.G.L. c. 151B
RETALIATION

85.     The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

86.     By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by M.G.L. c. 151B.

87.     As a direct and proximate result of the Defendant's retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

        WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT V
### VIOLATION OF M.G.L. c. 151B
### INTERFERENCE WITH RIGHT TO BE FREE OF DISCRIMINATION

88.     The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

89.     By the conduct alleged above, the Defendant coerced, intimidated, threatened, or interfered with the Plaintiff's enjoyment of the right to be free of unlawful discrimination and acted in deliberate disregard of the Plaintiff's rights, in violation of G.L. c. 151B, §§ 4(4A).

90.     As a direct and proximate result of the Defendant's violations of M.G.L. c. 151B, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

        WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT VI
### VIOLATION OF M.G.L. c. 151B
### AIDING AND ABETTING UNLAWFUL ACTS

91.     The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

92.     By the conduct alleged above, the Defendant aided, abetted, incited, compelled, or coerced, or attempted to do so, others in acts forbidden under G.L. c. 151B, in violation of G.L. c. 151B, §§ 4(5).

93.     As a direct and proximate result of the Defendant's violations of M.G.L. c. 151B, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

    WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

<u>COUNT VII</u>
<u>DEFAMATION</u>

94.     The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

95.     The Defendant published statements about and concerning the Plaintiff.

96.     These statements were false and defamatory.

97.     The Defendant knew, or should have known, these statements were false and defamatory.

98.     The Defendant published the statements with malicious intent.

99.     As a direct and proximate result of the Defendant's acts of defamation, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

    WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT VIII

TORTIOUS INTERFERENCEWITH CONTRACTUAL AND/OR ADVANTAGEOUS RELATIONSHIPS

100.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

101.   Dr. Soni had a contractual and/or advantageous relationship with institutes and/or professionals in her field, including New Hampshire NeuroSpine Institute, Elliot Medical Center, Concord Hospital, Catholic Medical Hospital and Baystate.

102.   The Defendant had knowledge of these relationships.

103.   The Defendant knowingly interfered with these relationships and did so with improper motive and/or by improper means.

104.   As a direct and proximate result of the Defendant's tortious interference, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT IX

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

106.   The Defendant engaged in a pattern of intentional conduct with the intent and purpose of causing extreme emotional distress to the Plaintiff.

107.   The Defendant's conduct was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

108.   As a direct and proximate result of the Defendant's intentional infliction of emotional distress, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT X
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

109.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

110.    The Defendant negligently engaged in a pattern of conduct that caused extreme emotional distress to the Plaintiff.

111.    The Defendant's conduct was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

112.    As a direct and proximate result of the Defendant's negligent infliction of emotional distress, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

## CLAIMS AGAINST THE DEFENDANT TIMOTHY COUNIHAN, M.D.

## COUNT XI
## VIOLATION OF 42 U.S.C. §2000 et seq.
## DISCRIMINATION BASED ON GENDER AND ETHNICITY

113.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

114.    By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of 42 U.S.C. §2000 et seq.

115.    As a direct and proximate result of the Defendant's discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT XII

VIOLATION OF 42 U.S.C. §2000 et seq.

RETALIATION

116. The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

117. By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by 42 U.S.C. §2000 et seq.

118. As a direct and proximate result of the Defendant's retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT XIII

VIOLATION OF M.G.L. c. 151B

DISCRIMINATION BASED ON GENDER AND ETHNICITY

119. The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

120. By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of M.G.L. c. 151B.

121. As a direct and proximate result of the Defendant's discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income,

loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XIV
## VIOLATION OF M.G.L. c. 151B
## RETALIATION

122.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

123.   By the conduct alleged above, the Defendant discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by M.G.L. c. 151B.

124.   As a direct and proximate result of the Defendant's retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XV
## VIOLATION OF M.G.L. c. 151B
## INTERFERENCE WITH RIGHT TO BE FREE OF DISCRIMINATION

125.   The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

126.   By the conduct alleged above, the Defendant coerced, intimidated, threatened, or interfered with the Plaintiff's enjoyment of the right to be free of unlawful discrimination and acted in deliberate disregard of the Plaintiff's rights, in violation of G.L. c. 151B, §§ 4(4A).

127.   As a direct and proximate result of the Defendant's violations of M.G.L. c. 151B, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of

personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XVI
## VIOLATION OF M.G.L. c. 151B
## AIDING AND ABETTING UNLAWFUL ACTS

128.    The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein in its entirety.

129.    By the conduct alleged above, the Defendant aided, abetted, incited, compelled, or coerced, or attempted to do so, others in acts forbidden under G.L. c. 151B, in violation of G.L. c. 151B, §§ 4(5).

130.    As a direct and proximate result of the Defendant's violations of M.G.L. c. 151B, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XVII
## DEFAMATION

131.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

132.    The Defendant published statements about and concerning the Plaintiff.

133.    These statements were false and defamatory.

134.    The Defendant knew, or should have known, these statements were false and defamatory.

135.    The Defendant published the statements with malicious intent.

136.   As a direct and proximate result of the Defendant's acts of defamation, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XVIII
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR ADVANTAGEOUS RELATIONSHIPS

137.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

138.   Dr. Soni had a contractual and/or advantageous relationship with institutes and/or professionals in her field, including New Hampshire NeuroSpine Institute, Elliot Medical Center, Concord Hospital, Catholic Medical Hospital and Baystate.

139.   The Defendant had knowledge of these relationships.

140.   The Defendant knowingly interfered with this relationship and did so with improper motive and/or by improper means.

141.   As a direct and proximate result of the Defendant's tortious interference, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

142.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

143.   The Defendant engaged in a pattern of intentional conduct with the intent and purpose of causing extreme emotional distress to the Plaintiff.

144.   The Defendant's conduct was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

19

145.    As a direct and proximate result of the Defendant's intentional infliction of emotional distress, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT XX
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

146.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

147.    The Defendant negligently engaged in a pattern of conduct that caused extreme emotional distress to the Plaintiff.

148.    The Defendant's conduct was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

149.    As a direct and proximate result of the Defendant's negligent infliction of emotional distress, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

CLAIMS AGAINST THE DEFENDANT BERKSHIRE MEDICAL CENTER

COUNT XXI
VIOLATION OF 42 U.S.C. §2000 et seq.
DISCRIMINATION BASED ON GENDER AND ETHNICITY

150.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

151.    By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her,

defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of 42 U.S.C. §2000 et seq.

152.   As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

<u>COUNT XXII</u>
<u>VIOLATION OF 42 U.S.C. §2000 et seq.</u>
<u>RETALIATION</u>

153.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

154.   By the conduct alleged above, the Defendant, through its agents, servants, and/or employees discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by 42 U.S.C. §2000 et seq.

155.   As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT XXIII
VIOLATION OF M.G.L. c. 151B
DISCRIMINATION BASED ON GENDER AND ETHNICITY

156.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

157.    By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of M.G.L. c. 151B.

158.    As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT XXIV
VIOLATION OF M.G.L. c. 151B
RETALIATION

159.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

160.    By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by M.G.L. c. 151B.

161.    As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

162.     The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

163.     The Defendant, its agents, servants, and/or employees negligently engaged in a pattern of conduct that caused extreme emotional distress to the Plaintiff.

164.     The Defendant's, and its agents', servants', and/or employees conduct was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

165.     As a direct and proximate result of the Defendant's negligent infliction of emotional distress, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

## CLAIMS AGAINST THE DEFENDANT BERKSHIRE FACULTY SERVICES, INC.

## COUNT XXVI
## VIOLATION OF 42 U.S.C. §2000 et seq.
## DISCRIMINATION BASED ON GENDER AND ETHNICITY

166.     The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

167.     By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of 42 U.S.C. §2000 et seq.

168.   As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXVII
## VIOLATION OF 42 U.S.C. §2000 et seq.
## RETALIATION

169.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

170.   By the conduct alleged above, the Defendant, through its agents, servants, and/or employees discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by 42 U.S.C. §2000 et seq.

171.   As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXVIII
## VIOLATION OF M.G.L. c. 151B
## DISCRIMINATION BASED ON GENDER AND ETHNICITY

172.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

173.   By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her,

defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of M.G.L. c. 151B.

174.    As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

COUNT XXIX<br>VIOLATION OF M.G.L. c. 151B<br>RETALIATION

175.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

176.    By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by M.G.L. c. 151B.

177.    As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

178.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

179.   The Defendant, its agents, servants, and/or employees negligently engaged in a pattern of conduct that caused extreme emotional distress to the Plaintiff.

180.   The Defendant's, and its agents', servants', and/or employees conduct was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

181.   As a direct and proximate result of the Defendant's negligent infliction of emotional distress, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

## CLAIMS AGAINST THE DEFENDANT BERKSHIRE HEALTH SYSTEMS, INC.

## COUNT XXXI
## VIOLATION OF 42 U.S.C. §2000 et seq.
## DISCRIMINATION BASED ON GENDER AND ETHNICITY

182.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

183.   By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of 42 U.S.C. §2000 et seq.

184.   As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXXII
## VIOLATION OF 42 U.S.C. §2000 et seq.
## RETALIATION

185.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

186.    By the conduct alleged above, the Defendant, through its agents, servants, and/or employees discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by 42 U.S.C. §2000 et seq.

187.    As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXXIII
## VIOLATION OF M.G.L. c. 151B
## DISCRIMINATION BASED ON GENDER AND ETHNICITY

188.    The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

189.    By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment based on her gender and ethnicity in violation of M.G.L. c. 151B.

190.   As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' discriminatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXXIV
## VIOLATION OF M.G.L. c. 151B
## RETALIATION

191.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

192.   By the conduct alleged above, the Defendant, through its agents, servants, and/or employees, discriminated against the Plaintiff, including but not limited to harassing her, defaming her, seeking to preclude her from being granted hospital privileges, and seeking to preclude her from obtaining employment in retaliation for her opposing practices forbidden by M.G.L. c. 151B.

193.   As a direct and proximate result of the Defendant's, and its agents', servants', and/or employees' retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described compensatory damages, punitive damages, plus interests, costs, and all other remedies this Court deems just and fair.

## COUNT XXXV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

194.   The Plaintiff repeats and incorporates herein the foregoing paragraphs as if each were set forth here in its entirety.

195.   The Defendant, its agents, servants, and/or employees negligently engaged in a pattern of conduct that caused extreme emotional distress to the Plaintiff.

196.   The Defendant's, and its agents', servants', and/or employees conduct was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

197.   As a direct and proximate result of the Defendant's negligent infliction of emotional distress, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, other financial losses, emotional distress and mental suffering.

WHEREFORE, the Plaintiff demands judgment against the Defendant for the above-described damages, plus interests, costs, and all other remedies this Court deems just and fair.

<u>JURY DEMAND</u>

The Plaintiff requests a jury trial on all claims as set forth herein.

Respectfully submitted,
Deepa Soni, M.D.,
By her attorneys,

/s/ Kathy Jo Cook
Kathy Jo Cook, BBO# 631389
kjcook@kjclawfirm.com
/s/ John T Martin
John T. Martin, BBO# 676344
jmartin@kjclawfirm.com
/s/ Benjamin H. Duggan
Benjamin H. Duggan, BBO# 684981
bduggan@kjclawfirm.com
KJC Law Firm, LLC
10 Tremont Street, 6th Floor
Boston, MA 02108
617-720-8447